UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LAURA RODRIGUEZ, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 2:08-cv-00273-JMS-WGH |
| | ) | |
| PARSONS INFRASTRUCTURE & TECHNOLOGY | ) | |
| GROUP INC., ET AL. | ) | |
| *Defendants.* | ) | |

## ENTRY

Presently before the Court is Defendant Parsons Infrastructure & Technology Group Inc.'s ("Parsons") Motion for Summary Judgment (the "Motion"). [Dkt. 79.] Parsons seeks summary judgment on the entirety of Plaintiff Laura Rodriguez's claim against Parsons for intentional interference with the contractual relationship she had with her former employer, Alion Science and Technology Corporation ("Alion").

A motion for summary judgment asks the Court to rule in favor of the moving party because there is no genuine issue surrounding any material fact and the moving party is entitled to judgment as a matter of law. *Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009) (citing Fed. R. Civ. Pro. 56(c)). When considering a summary judgment motion, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve any doubt as to the existence of a genuine issue for trial against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The non-moving party must do more, however, than just demonstrate a factual disagreement between the parties; it must demonstrate that the disputed factual issue is "material." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

**FACTUAL BACKGROUND**

Parsons had a contract with the Army Chemical Materials Agency to design, build, operate, and ultimately close the chemical demilitarization facility ("NECDF") in Newport, Indiana. [Dkt. 82-5 at 4.]  Parsons' mission was to destroy the chemical agent VX stored at the NECDF. [*Id.*]  Alion was a federal subcontractor that contracted with Parsons to manage the onsite laboratory and monitor the air present in and around the facility.  [Dkt. 82-3 at 4.]

Ms. Rodriguez joined Alion in May 2003 as an analytical laboratory manager at NECDF. [Dkt. 82-1 at 4-6, 11, 82-2 at 23.]  Ms. Rodriguez is homosexual, and her partner, Karen Bachtel, began working for Alion in June 2003 as a treaty chemist.  [Dkt. 82-1 at 3, 6-7.]  Alion had a policy prohibiting direct supervisory relationships among immediate family members, but Ms. Rodriguez had no direct or indirect supervisory responsibilities over Ms. Bachtel when they joined Alion.  [Dkt. 82-1 at 7, 82-4 at 5-7.]

Ms. Rodriguez was later approached about assuming a laboratory manager position at NECDF.  [Dkt. 82-1 at 14.]  Parsons approved of Ms. Rodriguez's elevation to that position. [Dkt. 82-1 at 14, 18-19.]  Ms. Rodriguez was officially promoted to the laboratory manager position on June 18, 2006, despite her immediate supervisor's concerns that she had too little experience managing people.  [Dkt. 82-2 at 29, 82-3 at 17.]  Her responsibilities as laboratory manager included setting up a secondary laboratory ("ECBC") at the Aberdeen Proving Grounds in Edgewood, Maryland.  [Dkt. 82-1 at 29.]

In September 2006, Parsons' site manager Richard Rife indicated to Chris Amos (Ms. Rodriguez's immediate supervisor) that Alion employees had been complaining about Ms. Rodriguez's laboratory management.  [Dkt. 82-3 at 8.]  Alion investigated the complaints.  [Dkt. 82-3 at 9-10.]  A few months later, Parsons' laboratory director Richard Sisson called Ms. Ro-

driguez into his office to tell her that staff members were still complaining to Parsons about various management issues.  [Dkt. 82-1 at 28.]

At the end of March 2007, Doug Reehl, who had replaced Mr. Rife as Parsons' project manager, met with Mr. Amos and told him that Alion employees were still complaining about laboratory management and that he believed Ms. Rodriguez was a problem.  [Dkt. 82-3 at 12-13, 82-4 at 8.]  The fact that Ms. Rodriguez was homosexual was never discussed.  [Dkt. 82-3 at 14.] Parsons later sent Mr. Amos a letter about issues at the laboratory and asked Alion "to take some action with all of the reported employee relations problems, unhappy employees, causing service to drop down."  [Dkt. 82-4 at 8.]

On April 4, 2007, Mr. Reehl, Mr. Amos, and Ms. Madaleno met in Newport.  [Dkt. 82-4 at 10.]  Mr. Reehl complained about Alion's employees, specifically, that Ms. Rodriguez was not doing her job.  [Dkt. 82-4 at 10-11.]  Alion's contract with Parsons at NECDF was to end in fall 2007, and Mr. Amos asked Mr. Reehl what Alion needed to do to keep the contract.  [Dkt. 82-2 at 21-22.]  Mr. Reehl told Mr. Amos and Ms. Madaleno that Alion needed to remove Ms. Rodriguez from the project and to resolve a fee dispute between Alion and Parsons.[1]  [Dkt. 82-2 at 21.] There was no discussion that Ms. Rodriguez was homosexual.  [Dkt. 82-3 at 24.]  An internal investigation by Ms. Madaleno "found a group of dysfunctional employees who had many different issues but were focusing on [Ms. Rodriguez] as the cause of all of the problems."  [Dkt. 93-3 at 30.]

In order to "ameliorate the situation," Alion took Ms. Rodriguez off the NECDF contract and reassigned her to the ECBC laboratory in Maryland "to see if we could make the complaints

---

[1] Mr. Reehl denies that he told anyone from Alion to remove Ms. Rodriguez from the project. [Dkt. 93-4 at 15-17.]  Because the Court resolves conflicting evidence in favor of the non-moving party on summary judgment, the Court will accept for purposes of this ruling that Mr. Reehl told Alion to remove Ms. Rodriguez from the NECDF project.

go away." [Dkt. 82-3 at 26.] Ms. Rodriguez retained her title as laboratory manager. [*Id.*] Mr. Amos spoke with Mr. Reehl in June 2007 and again asked him what Alion needed to do to keep the NECDF contract. [Dkt. 82-3 at 28.] Mr. Reehl repeated that Ms. Rodriguez should not manage the NECDF laboratory and that the fee dispute between Alion and Parsons needed to go away. [Dkt. 82-3 at 28.]

Alion offered Ms. Rodriguez a separation agreement or the option to try to make the laboratory position at ECBC permanent. [Dkt. 82-3 at 30.] Ms. Rodriguez entered into a separation agreement with Alion as result of which she received $142,000 representing a severance payment. She resigned from the company effective September 14, 2007. [Dkt. 82-3 at 30, 82-2 at 18, 19.] Despite removing Ms. Rodriguez from the NECDF laboratory, Alion lost its bid to continue the NECDF contract with Parsons. [Dkt. 82-4 at 14.]

DISCUSSION

### A.     Ms. Rodriguez's Shifting Theories

Ms. Rodriguez filed her original complaint against Parsons and Shaw Environmental and Infrastructure, Inc. on July 11, 2008. [Dkt. 1.] This Court dismissed Ms. Rodriguez's complaint without prejudice for failure to state a claim on October 14, 2008. [Dkt. 24.] Ms. Rodriguez refiled a succinct complaint on November 6, 2008, alleging in relevant part that "for the purported sexual orientation of Rodriguez, . . . Parsons intentionally induced Alion to terminate its employment contract with Rodriguez, causing her to lose her job." [2:08-cv-423-WTL-WGH Dkt. 1 at 2.][2] Parsons again moved to dismiss the complaint, but the Court denied the motion and concluded that Ms. Rodriguez's complaint clearly alleges "that, due to her purported sexual

---

[2] Ms. Rodriguez's complaint was filed under cause number 2:08-cv-423-WTL-WGH. The parties filed a joint motion to consolidate the cases, which this Court granted on December 2, 2008. [Dkt. 28.] All filings since that time were filed under the present cause number.

- 4 -

orientation, [Parsons] used 'economic pressures' to induce her employer to terminate her."  [Dkt. 36 at 2.]

Parsons moves for summary judgment, arguing, in relevant part, that there is no evidence that Parsons acted based on Ms. Rodriguez's sexual orientation.  [Dkt. 84-1 at 18.]  Ms. Rodriguez responds with two arguments that vary from the allegations in the operative complaint. First, she argues that she does not have to prove that Parsons' interference was based on her sexual orientation because she "must merely show (among other things) that there was an absence of justification for the interference."  [Dkt. 92 at 10.]  This argument retreats from the position she admits she "has asserted . . . throughout this litigation" that Parsons' alleged animus for her sexual orientation motivated its actions.  [Dkt. 92 at 9.]  Second, Ms. Rodriguez argues that she can succeed on her claim by proving that a breach occurred when Alion transferred her from the NECDF facility and that she does not have to prove that she was actually terminated as a result of Parsons' interference.  [Dkt. 92 at 11-14.]

In reply, Parsons correctly notes that a plaintiff cannot amend the complaint through arguments in response to a motion for summary judgment.  *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997) (preventing plaintiff who identified a hostile work environment in a harassment complaint from proceeding on quid pro quo theory in response to motion for summary judgment).  This Court allowed Ms. Rodriguez's claim to survive Parsons' renewed motion to dismiss because she alleged that Parsons' interference was due to her purported sexual orientation and resulted in her termination.  [Dkt. 36 at 2.]  Discovery closed on February 1, 2010, and Parsons moved for summary judgment on March 15, 2010.  [Dkt. 70, 80.]  Ms. Rodriguez cannot belatedly attempt to amend her pleadings (without the agreement of Parsons or leave of Court)

by altering her claims in response to Parsons' summary judgment motion.  The Court will address the Motion based on the claims asserted by Ms. Rodriguez in the operative complaint.

Moreover, neither argument that Ms. Rodriguez asserts for the first time in response to Parsons' Motion changes the outcome.  As described in detail below, the undisputed evidence shows that even if Parsons demanded that Ms. Rodriguez be removed from the NECDF facility, it had a legitimate business reason for doing so based on its concern for employee morale and Ms. Rodriguez's perceived lack of leadership skills.  There are no issues of material fact surrounding Parsons' business justification, and it is entitled to summary judgment.

**B.**      **Intentional Interference with Contractual Relationship**

Under Indiana law, which the parties agree governs this dispute,[3] the five elements of intentional interference with a contractual relationship are as follows:

1. The existence of a valid relationship;

2. The defendant's knowledge of the existence of the relationship;

3. The defendant's intentional interference with that relationship;

4. The absence of justification; and

5. Damages resulting from defendant's wrongful interference with the relationship.

*Bregin v. Liquidebt Sys., Inc.*, 548 F.3d 533, 538 (7th Cir. 2008) (citation omitted).

"The parties in an employment at will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship." *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284 (Ind. 1991).  Therefore, an at-will employee "may bring a claim for tortious interference provided that, in addition to demonstrating the standard elements of the tort, she is prepared to show that the defendant in-

---

[3] This Court has jurisdiction to decide Ms. Rodriguez's claim because the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.

terferer acted intentionally and without a legitimate business purpose." *Trail v. Boys & Girls Club*, 845 N.E.2d 130, 138 (Ind. 2006).

On summary judgment, the plaintiff "must come forth with credible evidence on all matters upon which he bears the burden of proof at trial." *Williams v. Seniff*, 342 F.3d 774, 793 (7th Cir. 2003). It is the plaintiff's burden on a claim for interference with a contractual relationship "to allege and prove that the conduct was not justifiable rather than to require the defendant to allege and prove justification as an affirmative defense." *Bradley v. Hall*, 720 N.E.2d 747, 751 n.4 (Ind. Ct. App. 1999).

The legal dispute between Ms. Rodriguez and Parsons largely turns on Parsons' justification and motivation for interfering in the relationship between Alion and Ms. Rodriguez. In other words, although each party presents detailed arguments attacking multiple aspects of the other party's case, the dispute ultimately hinges on whether Parsons' actions were legally justified. The following factors are to be considered when determining whether the defendant's conduct was justified:

> a. The nature of the defendant's conduct;
>
> b. The defendant's motive;
>
> c. The interests of the plaintiff with which the defendant's conduct interferes;
>
> d. The interest sought to be advanced by the defendant;
>
> e. The social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;
>
> f. The proximity or remoteness of the defendant's conduct to the interference; and
>
> g. The relations between the parties.

*Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1235 (Ind. 1994).

## C.      Undisputed Evidence Regarding Parsons' Business Justification[4]

For purposes of summary judgment, Parsons admits the first two elements of Ms. Rodriguez's claim—that she had a valid relationship with Alion and that Parsons was aware of that relationship. [Dkt. 84-1 at 15.] The parties dispute, however, whether Parsons' interference with that relationship was justified.[5]

It is Ms. Rodriguez's burden to come forth with credible evidence on summary judgment to prove that Parsons' conduct was "not justifiable." *Bradley*, 720 N.E.2d at 751 n.4; *Williams*, 342 F.3d at 793. A plaintiff's "internal suspicions" regarding another party's motivations are insufficient to defeat summary judgment. *Williams*, 342 F.3d at 794-95 (applying Indiana law in claim for intentional interference with a contractual relationship).

In *Bregin*, the Seventh Circuit Court of Appeals applied Indiana law to a plaintiff's claim for interference with an employment contract and found it significant that the plaintiff could not show that the third-party's complaints were unjustified. 548 F.3d at 539. The Seventh Circuit

---

[4] Ms. Rodriguez filed a surreply arguing that Parsons improperly designated additional materials on reply. [Dkt. 104.] The materials Parsons designated on reply were in response to Ms. Rodriguez's arguments opposing summary judgment. [*See, e.g.*, Dkt. 102-2 at 2, 6 (Ms. Rodriguez's Answers to Interrogatories asserting theory that she was dismissed due to her sexual orientation).] The local rules contemplate a surreply when the moving party "relies upon evidence not previously cited . . . ." L.R. 56.1(d). It was not improper for Parsons to designate additional materials on reply that responded to Ms. Rodriguez's arguments particularly given Rodriguez's attempt to change theories of recovery.

[5] Parsons also argues that "there is no evidence that Parsons intentionally induced Alion to end its employment relationship with Rodriguez [because] Rodriguez voluntarily resigned months after transferring away from NECDF." [Dkt. 84-1 at 15.] The separation agreement Ms. Rodriguez signed provides that her resignation was voluntary, [Dkt. 84-2 at 1], and is an admission by a party opponent. Fed. R. Evid. 801(d)(2). It does not, however, estop Ms. Rodriguez from arguing that her resignation was actually involuntary. *See, e.g., KnowledgeAZ, Inc. v. Jim Walters Res. Inc.*, 617 F. Supp. 2d 774, 791 (S.D. Ind. 2008) (a party's previous inconsistent statement "is clearly relevant and admissible under Rule 801(d)(2)" but the party "may be able to distinguish their prior remarks or shine a less prejudicial light on them by giving the remarks some additional context" at trial). Consequently, the parties' dispute surrounding the voluntariness of Ms. Rodriguez's departure is an inappropriate basis for summary judgment.

noted that "Indiana courts look to a number of factors to determine whether a defendant's conduct is justified, one of which is motive." *Id.* (citing *Winkler*, 638 N.E.2d at 1235).  The Seventh Circuit did not specifically analyze the justification factors other than motive before affirming the district court's grant of summary judgment after concluding that the intervention was justified. *Bregin*, 548 F.3d at 539.

Following the Seventh Circuit's analysis in *Bregin* and focusing on the evidence surrounding Parsons' motive, this Court concludes that Parsons is entitled to summary judgment. The undisputed evidence shows that Ms. Rodriguez's sexual orientation never came up during any meetings between Parsons and Mr. Amos, Ms. Madaleno, or Ms. Rodriguez; and that Parsons' concerns focused exclusively on legitimate business concerns surrounding Ms. Rodriguez's perceived lack of leadership by the Alion employees.  [Dkt. 82-2 at 4, 82-3 at 14, 24, 93-3 at 7, 28.]  In fact, the Alion witnesses relied upon by Ms. Rodriguez confirm the "dysfunction" of the workplace.  [Dkt. 93-3 at 30.]  There is no evidence that Parsons' actions were motivated by an animus for Ms. Rodriguez's sexual orientation.[6]  Ms. Rodriguez admits that her subordinates lodged complaints against her about her management style.  [Dkt. 82-1 at 27-28.]  Although Ms. Rodriguez may have her own internal suspicions regarding the true motivations of

---

[6] The parties devote little attention to the issue of whether animus against Ms. Rodriguez's sexual orientation would be unjustified under Indiana law.  Parsons relegates its discussion to a footnote without citation to case law, [Dkt. 84-1 at 18 n.5], and Ms. Rodriguez does not directly respond.  Given the absence of cogent argument, the Court will not address the issue. *See United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) (argument raised in passing in a footnote deemed waived).

her subordinates' complaints,[7] it is her burden on summary judgment to present evidence showing that Parsons' intervention was not justified.  Ms. Rodriguez fails to carry this burden.

Indiana courts also consider the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff to determine justification.  *Winkler*, 638 N.E.2d at 1235; *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 121 (Ind. Ct. App. 2008) (acknowledging the balancing test between freedom of action and contractual interests).  As a general contractor on a chemical demilitarization project for the government, Parsons had a legitimate interest in communicating with its subcontractors about dysfunction in the workplace.  On the other hand, Ms. Rodriguez was an at-will employee whose only term of employment was her salary.  [Dkt. 82-2 at 20, 23-25.]  Parsons' social interests in overseeing a sensitive government project and communicating with its subcontractors outweigh Ms. Rodriguez's limited contractual interests under the facts of this case.

There are no issues of material fact regarding Ms. Rodriguez's claim against Parsons. The undisputed evidence shows that Parsons voiced its legitimate business concerns to Alion and those concerns focused exclusively on reasonable concerns surrounding Ms. Rodriguez's perceived lack of leadership and employee morale.  Parsons' justifiable interests in overseeing the

---

[7] Ms. Rodriguez points to Ms. Madaleno's testimony that an Alion employee, Francis Huang, complained to her about Ms. Rodriguez and told her that "in his culture, people like that were stoned or killed."  [Dkt. 93-3 at 30.]  However, Mr. Huang made this "odd remark" to an Alion employee, not a Parsons employee, and the evidence shows that Mr. Huang's complaints about Ms. Rodriguez *to Parsons* were based on his assessment that she "did not know what she was doing, wasn't credentialed to be in the laboratory position."  [Dkt. 93-3 at 23, 30.]  Therefore, although Mr. Huang may have made biased remarks about Ms. Rodriguez to Alion, there is no evidence that he made these remarks to Parsons or that Parsons' motivation for its communications was based on anything other than legitimate business concerns.

chemical demilitarization project outweigh Ms. Rodriguez's contractual interests.  For these rea-

sons, Parsons is entitled to summary judgment on Ms. Rodriguez's claim.[8]

CONCLUSION

Parsons' Motion for Summary Judgment is **GRANTED** as to Ms. Rodriguez's entire

claim against Parsons.  Final judgment shall not issue at this time, pending a ruling on Shaw En-

vironmental and Infrastructure Inc.'s Motion for Sanctions.

08/25/2010

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robert F. Hunt
HUNT HASSLER & LORENZ LLP
hunt@huntlawfirm.net

Kristin B. Keltner
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kristin.keltner@odnss.com

Jan S. Michelsen
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
jan.michelsen@odnss.com

Steven F. Pockrass
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
steven.pockrass@ogletreedeakins.com

---

[8] Even if Ms. Rodriguez's claim had survived summary judgment, she would have been hard pressed to prove damages because she was employed with Alion until about the same time that Alion lost the NECDF contract with Parsons—fall 2007.  [Dkt. 82-4 at 14, 84-2 at 1.]  Moreover, although Ms. Rodriguez would have been entitled to damages for emotional distress, she admits that Parsons would receive a set off for the amount she received from Alion in her severance agreement.  [Dkt. 92 at 20.]  Given the size of the severance agreement, it is possible that any remaining damages would be consumed by the set off.

Candace S. Walker
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
candace.walker@odnss.com