UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LAURA RODRIGUEZ,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs.* | ) | 2:08-cv-0273-JMS-WGH |
| | ) | |
| PARSONS INFRASTRUCTURE & TECHNOLOGY<br>GROUP, INC., *et al.*,<br>    *Defendants*. | )<br>)<br>) | |

# ORDER

Presently before the Court is Defendant Shaw Infrastructure & Technology Group, Inc.'s ("Shaw"), Motion for Sanctions. [Dkt. 95.] Shaw seeks sanctions against Plaintiff Laura Rodriguez and her attorney for allegedly filing a frivolous lawsuit against Shaw without conducting a reasonable inquiry into the facts and the law and for failing to dismiss the claims after learning they were not viable. [*Id.* at 1.] For the reasons detailed herein, the Court finds that sanctions are warranted under 28 U.S.C. § 1927.

## RELEVANT BACKGROUND

Ms. Rodriguez filed a Complaint against Shaw and Parsons Infrastructure & Technology Group, Inc. ("Parsons"), in July 2008, alleging that Shaw and Parsons had tortiously interfered with her relationship with her former employer, Alion Science and Technology Corporation ("Alion"), because of her sexual orientation. [Dkt. 1.] Shaw and Parsons jointly moved to dismiss the Complaint for failure to state a claim. [Dkt. 15.] This Court granted that motion and dismissed Ms. Rodriguez's action without prejudice in October 2008, finding that "Plaintiff gives no indication of how Defendants allegedly interfered with her employment contract." [Dkt. 24 at 4.]

Ms. Rodriguez filed an Amended Complaint in November 2008 and asserted, in relevant part, that Shaw intentionally induced Alion to terminate its employment contract with Ms. Rodriguez "as a result of the economic pressures which were placed on Alion by agents, representatives, and employees of Parsons and Shaw." [2:08-cv-0423-WTL-WGH dkt. 1 ¶¶ 6-7.][1] Shaw and Parsons moved to dismiss the Amended Complaint for failure to state a claim. [Dkt. 26.] This Court denied that motion in February 2009, finding that Ms. Rodriguez stated a claim by "alleg[ing] that, due to her purported sexual orientation, Defendants used 'economic pressures' to induce her employer to terminate her." [Dkt. 36 at 2.]

A settlement conference was held in September 2009, and concerns were expressed that Ms. Rodriguez's claim against Shaw did not meet the requirements of Rule 11. [Dkt. 95-1 at 1.] Ms. Rodriguez's counsel—Mr. Robert Hunt—indicated that forthcoming witnesses would make statements that would establish the basis for the lawsuit. [*Id.*; *see also* dkt. 63 ¶ 1 ("Plaintiff is encouraged to produce affidavits of the appropriate Alion witnesses in advance of the plaintiff's deposition.").]

In October 2009, the parties deposed Chris Amos, Ms. Rodriguez's manager at Alion, and Kathy Madaleno, Alion's human resources director. Both Mr. Amos and Ms. Madaleno testified that Shaw did not influence Alion's decision to terminate Ms. Rodriguez. [Dkts. 119-4 at 4; 119-6 at 3.]

In January 2010, the parties deposed Debbie Kiefer, a Department of Defense employee, and Debbie Lander, a former Shaw employee. Ms. Kiefer testified that Bruce Rohrbach—a Shaw employee—had "overstepp[ed] his boundaries by having contractor personnel go to see the

---

[1] Ms. Rodriguez's Amended Complaint was filed under cause number 2:08-cv-423-WTL-WGH. The parties filed a joint motion to consolidate the cases, which this Court granted on December 2, 2008. [Dkt. 28.] All filings since that time were filed under the present cause number.

government contracting officer [about any concerns]." [Dkt. 113-3 at 11.] Ms. Kiefer believed that if there were issues at the lab, "then they should have been going through their management chain, their personnel office . . . they should not be coming over to a government employee of Mr. Mars' position to be complaining about things." [*Id.* at 12.] Ms. Lander testified that she had had discussions with Mr. Rorhbach about Parsons seeking bids to replace Alion on the demilitarization project. [Dkt. 119-3 at 4-5.] There is no evidence that Mr. Rohrbach mentioned Ms. Rodriguez or her sexual orientation during any of these conversations.

On February 5, 2010, after discovery had concluded, Mr. Hunt sent Shaw's counsel—Ms. Jan Michelsen—a settlement demand letter requesting $20,000. [Dkt. 119-7.] Ms. Michelsen responded on behalf of Shaw on February 18, 2010, emphasizing that she had reviewed the evidence referenced in the demand letter and "found absolutely no evidence even arguably sufficient for Rodriguez to meet the elements of an intentional interference with contract claim [with regard to Shaw]." [Dkt. 95-1 at 1.] Ms. Michelsen rejected the settlement demand and expressed her opinion that "Shaw should never have been a party to this lawsuit" and that "continued litigation of that claim is a clear violation of Rule 11." [*Id.*] Finally, Ms. Michelsen announced her intention to "promptly submit the 21-day safe harbor notice required by Rule 11. . . [i]f Rodriguez does not voluntarily dismiss her claims against Shaw and instead forces Shaw to prepare and file dispositive motions." [Dkt. 95-1 at 2.]

On March 11, 2010,[2] Ms. Michelsen sent Mr. Hunt a letter enclosing the safe harbor notice required by Rule 11(c)(1)(A), "*again* reminding [counsel] that your client's allegations lack sufficient evidentiary support to justify further litigation." [Dkt. 95-2 at 1, 3 (original empha-

---

[2] The letter is dated March 10, 2010, but it was faxed to Mr. Hunt the following day. [Dkt. 113 at 2.]

sis).] The letter warned that if the claim against Shaw were not dismissed, Shaw would seek sanctions under Rule 11 and § 1927. [*Id.* at 3.]

On March 12, 2010—the day after receiving the safe harbor notice and sanctions motion—Ms. Rodriguez moved to dismiss her claim against Shaw. [Dkt. 78.] The Court granted that motion and dismissed the claim against Shaw with prejudice on March 18, 2010. [Dkt. 87.] On April 16, 2010, Shaw filed the Motion for Sanctions against Ms. Rodriguez and Mr. Hunt for "unreasonably and vexatiously mulitpl[ying] the proceedings with continued advocacy of meritless claims despite unearthing little or no evidentiary support for the claims." [Dkt. 95 at 1.] The Court held a hearing on Shaw's motion on September 30, 2010.

### DISCUSSION

Ms. Rodriguez and Mr. Hunt contend that sanctions are not warranted because they dismissed the claim against Shaw during the Rule 11 safe harbor period; the motion is "legally barred by virtue of Shaw's contractual agreement not to pursue [sanctions]"; Shaw is estopped from pursuing sanctions in this case; and Ms. Rodriguez "had every reason" to continue to pursue her claim against Shaw. [Dkt. 113 at 2, 4, 7, 9.] The Court will address these arguments in turn.

### I.     Rule 11 Sanctions and the Safe Harbor Provision

Ms. Rodriguez argues that Rule 11 sanctions are improper because she dismissed her claim against Shaw during the twenty-one day safe harbor period set forth in the rule. The Court agrees with Ms. Rodriguez on this issue.

Rule 11(c)(2) provides that a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." The Seventh Circuit Court of Appeals has held that the twenty-one day safe harbor "is not merely an empty

formality." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1026 (7th Cir. 1999). Instead, the safe harbor period shelters the offending party from Rule 11 sanctions if it withdraws or appropriately corrects the challenged item within twenty-one days. *See* Fed. R. Civ. P. 11 cmt. 1993 Amendments ("[A] party *will not* be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position….") (emphasis added).

Ms. Rodriguez argues that Shaw's combined motion for sanctions under Rule 11 and § 1927 violates the requirement of Rule 11(c)(2), which provides that a "motion for sanctions must be made separately from any other motion . . . ." But as the Sixth Circuit Court of Appeals noted, the Advisory Committee Notes to Rule 11 indicate that the separateness requirement is intended "to highlight the sanctions request by preventing it from being tacked onto or buried in motions on the merits . . . ." *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997) (holding that motion for sanctions under Rule 11, 42 U.S.C. § 1988, and 28 U.S.C. § 1927 did not violate separateness requirement). Because Shaw's Motion for Sanctions is not combined with a motion on the merits, it is sufficiently "separate" to comply with the rule.

Shaw argues that the spirit of the safe harbor provision is to avoid the unfair surprise of a sanctions motion and that it complied by informally warning Ms. Rodriguez's counsel throughout the litigation that the claim against Shaw should be dismissed. [Dkt. 120 at 4-6.] Shaw cites *Divane* to support its position, but that case underscores the Seventh Circuit's view that at least twenty-one days of formal notice is required before filing a Rule 11 motion. In *Divane*, a party moved for sanctions after giving the required notice, but the district court dismissed the motion as premature under the facts of the case. 200 F.3d at 1026-27. The party moved for sanctions again after judgment was entered but did not give notice before filing the motion. *Id.* at 1024. The district court granted the motion, and on appeal, the Seventh Circuit emphasized that Rule

11(c)(1)(A) allows a district court to give a party more than twenty-one days to correct or withdraw its pleadings. *Id.* at 1027. In *Divane*, the district court's dismissal "effectively extended the safe harbor for [the non-moving party] until trial, by which time the factual basis for the answer and counterclaim would have been determined." *Id.* The Seventh Circuit concluded that the moving party complied with the notice requirement because "the dismissal of [the moving party's] initial motion to sanction [the non-moving party] as premature did not extinguish this effective notice." *Id.* at 1027.

Rule 11's notice requirement and safe harbor provision advance at least three important policy considerations. First, notice of a sanctions filing forces the non-moving party to earnestly weigh the strength of its claim against the risk of being sanctioned. Second, the safe harbor period provides an opportunity for a party to dismiss a weak case, saving court resources that are no longer needed to adjudicate the claim or the unnecessary sanctions motion. Third, because it can sometimes be hard to distinguish between empty threats and real warnings expressed in the parlance of litigation, Rule 11's notice requirement acts as the figurative yellow light to alert counsel that his opponent is actually poised to seek sanctions if counsel ignores the warning and proceeds with the claim. *See Mas Capital, Inc. v. Biodelivery Scis. Int'l*, 2006 U.S. Dist. LEXIS 60928 *22 n.6 (S.D. Ind. Aug. 25, 2006) (describing Rule 11 notice requirement as a "21-day warning shot"). These important policy considerations, among others, support Rule 11's requirement that a sanctions motion be served at least twenty-one days before it is filed with the Court.

There is no dispute that Shaw waited until March 11, 2010 to serve Ms. Rodriguez with a safe harbor notice and its motion for sanctions pursuant to Rule 11(c)(2). Likewise, there is no dispute that Ms. Rodriguez moved to dismiss her claim against Shaw the following day. By tak-

ing prompt action when she saw the figurative yellow light, Ms. Rodriguez protected herself from Rule 11 sanctions. Because the safe harbor "is not merely an empty formality[,]" *Divane*, 200 F.3d at 1026, and Ms. Rodriguez dismissed her claim during that time, the Court denies Shaw's request for Rule 11 sanctions.

  **II.  Sanctions Under 28 U.S.C. § 1927**

    **A. Applicable Standard**

Shaw also seeks sanctions against Ms. Rodriguez's counsel, Mr. Hunt, under 28 U.S.C. § 1927.[3] Section 1927 provides that a lawyer "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010). The purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them. *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). An award under § 1927 is compensatory, not punitive. *Shales v. General Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009).

Bad faith is required for a § 1927 award, but there is a distinction between subjective and objective bad faith. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). Subjective bad faith, which is more difficult to prove, is not always necessary and "must be shown only if the conduct under consideration had an objectively colorable basis." *Id.* Objective bad faith does not require a finding of malice of ill will; instead, reckless indifference to the law will qualify. *Id.* The Court has discretion to impose § 1927 sanctions when an attorney has acted in an objectively unreasonable manner by pursuing a claim that is without a plausible legal or factual

---

[3] A district court can deny a request for sanctions under Rule 11 and grant it under § 1927. *See, e.g.*, *Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827 (S.D. Ind. 1995).

basis. *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). Additionally, § 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." *Id.*

### B. Timing of Sanctions Award

Shaw argues that it is entitled to recover its fees from Mr. Hunt pursuant to § 1927 because Ms. Rodriguez's claim against Shaw "was frivolous, unreasonable, and groundless from the start." [Dkt. 95 at 14.] Ms. Rodriguez's Amended Complaint asserted, in relevant part, that Shaw intentionally induced Alion to terminate its employment contract with Ms. Rodriguez "as a result of the economic pressures which were placed on Alion by agents, representatives, and employees of Parsons and Shaw." [2:08-cv-0423-WTL-WGH dkt. 1 ¶¶ 6-7.] Shaw and Parsons moved to dismiss the Amended Complaint, but the Court denied that request, finding that Ms. Rodriguez stated a claim by "alleg[ing] that, due to her purported sexual orientation, Defendants used 'economic pressures' to induce her employer to terminate her." [Dkt. 36 at 2.]

When asked at the sanctions hearing what evidence supported filing a claim against Shaw for allegedly asserting "economic pressures" on Alion, Mr. Hunt informed the Court that he believed that two witnesses—Ms. Kiefer (a government employee) and Ms. Lander (a former Shaw employee)—would testify that Shaw employee Bruce Rohrbach interfered with Ms. Rodriguez's employment contract. [*See also* dkt. 113 at 10-11 (making same argument).] Mr. Hunt cites a June 7, 2007 email from Ms. Lander to Ms. Rodriguez for "at least partially" supporting that belief. [Dkt. 113 at 11 (citing dkt. 113-5) (email from Ms. Lander referencing discussion with Mr. Rohrbach, that Alion might lose the Parsons contract, and Ms. Lander's regret that Ms. Rodriguez was "stuck in the middle of it").]

Although Ms. Rodriguez's claim against Shaw was never particularly strong, it was not frivolous when filed because Ms. Rodriguez and Mr. Hunt believed that Ms. Kiefer and Ms.

Lander would provide testimony supporting the claim. *See* Ind. R. Prof. Cond. 3.1 cmt. 2 ("The filing of an action . . . is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery."). Mr. Hunt admits, however, that in her deposition, Ms. Lander "chose not to say the same things that she had earlier told Rodriguez to support such a belief." [Dkt. 113 at 11.] And although Ms. Kiefer testified that she believed Mr. Rohrbach "overstepped his bounds by having [Alion] personnel go to see the government contracting offer," [dkt. 113-3 at 11], even assuming this constituted sufficient interference, it is not evidence that the interference was unjustified or based on Ms. Rodriguez's sexual orientation. [*See* dkt. 128 at 6-8 (discussing requirement that interference be unjustified).]

Moreover, when the parties deposed the key Alion employees—Mr. Amos (Ms. Rodriguez's manager at Alion) and Ms. Madaleno (Alion's human resources director)—both unequivocally testified that Shaw did not influence Alion's decision to terminate Ms. Rodriguez. [*See* dkt. 119-4 at 4 (Counsel: "Is it your understanding that Alion's decision to terminate Laura Rodriguez was influenced by Shaw in any way?" Ms. Madaleno: "No."); dkt. 119-6 at 3 (Counsel: "And was your decision [to terminate Ms. Rodriguez] influenced by anyone from Shaw in any way?" Mr. Amos: "No.").] In fact, as detailed in the Court's order granting summary judgment in favor of Parsons, there was significant "dysfunction" (to use Ms. Madaleno's term) at the Alion laboratory that Ms. Rodriguez was managing, and Ms. Rodriguez admits that her subordinates had lodged complaints about her management style. [Dkt. 128 at 9.] There is no evidence, however, that any of Shaw's actions were motivated by Ms. Rodrigeuz's sexual orientation. [*See* dkt. 120 at 7-8, 11-12 (detailing testimony of conversations with Mr. Rohrbach).]

In sum, Ms. Rodriguez's claim against Shaw was based on her own internal suspicions and cryptic comments from tangential witnesses. A plaintiff's internal suspicions regarding another party's motivations are insufficient to support a claim for intentional interference with contractual relationship. *Williams v. Seniff*, 342 F.3d 774, 794-95 (7th Cir. 2003) (applying Indiana law). And it is counsel's responsibility to explain to his client that lawsuits must be based on facts proved by admissible evidence, not a client's suspicions, even if those suspicions are fervently believed.

In considering the instant motion, the Court contemplated awarding Shaw reasonable attorney fees it incurred after the depositions in October 2009 when Mr. Amos and Ms. Madaleno testified that Shaw did not influence the decision to terminate Ms. Rodriguez. Because there was a chance that Ms. Kiefer or Ms. Lander would provide testimony in January 2010 to support Ms. Rodriguez's claim against Shaw, the Court, in its discretion, gives Mr. Hunt the benefit of the doubt and declines Shaw's invitation to begin the sanctions award in October 2009.

After the final depositions on January 28, 2010, however, it should have been clear to Mr. Hunt that there was no basis for continuing to pursue Ms. Rodriguez's claim against Shaw. In fact, one of the arguments in response to Shaw's Motion for Sanctions acknowledges that there was no basis for the lawsuit against Shaw past that point. [*See* dkt. 113 at 9 ("[U]ntil the depositions of two key witnesses were accomplished on January 28, 2010, Rodriguez had every reason to continue to believe that her claim against Shaw was one to be pursued.").] Instead of dismissing the claim against Shaw, however, Mr. Hunt sent Shaw's counsel a $20,000 settlement de-

mand letter on February 5, 2010.[4] [Dkt. 119-7.] Demanding money to settle a claim that is no longer viable constitutes objectively unreasonable, vexatious behavior and warrants sanctions under § 1927. *See Kelly*, 414 F.3d at 836 (affirming sanctions award for attorney who demanded $3,000 for frivolous claim, which was "objectively unreasonable and vexatious" behavior). Because Mr. Hunt did not dismiss Ms. Rodriguez's claim against Shaw when it became clear that it was no longer viable, the Court sanctions Mr. Hunt pursuant to § 1927 and awards Shaw reasonable attorney fees incurred after January 28, 2010.[5]

### C. Alleged Contractual Agreement to Forgo Filing Sanctions

Mr. Hunt argues that Shaw's Motion for Sanctions is "legally barred by virtue of Shaw's contractual agreement not to pursue [sanctions]." [Dkt. 113 at 4.] In essence, Mr. Hunt contends that Shaw extended an offer to forgo sanctions if Ms. Rodriguez dropped her claim against Shaw, and that offer was accepted when Ms. Rodriguez moved to dismiss the claim against Shaw. The Court does not find that any contract was formed. Moreover, any contract that may have formed between Mr. Hunt and Ms. Michelsen—two non-parties—as well as any breach thereof, is not the subject of this litigation, and the Court will not address it. Mr. Hunt's promissory estoppel argument fails for the same reasons. [Dkt. 113 at 7-9.]

---

[4] Mr. Hunt acknowledged in the demand letter that "our claim against Parsons is the much stronger of the two." [Dkt. 119-7 at 2.] Although Mr. Hunt cited Ms. Kiefer's testimony about Mr. Rohrbach "overstepping his bounds" as support for the claim against Shaw, [*id.*], Ms. Kiefer's barebones opinion is insufficient to support the alleged tort because there is no evidence that any interference by Shaw was unjustified. *See Bregin v. Liquidebt Sys., Inc.*, 548 F.3d 533, 538 (7th Cir. 2008) (detailing the five elements of the intentional interference with a contractual relationship, including the "absence of justification").

[5] Because the Court has determined that Mr. Hunt is only liable for reasonable attorney fees incurred after the final depositions on January 28, 2010, Mr. Hunt's argument that Ms. Michelsen was at fault for the delay in completing those depositions is irrelevant to the sanctions award. [Dkt. 113 at 13-18.]

Moreover, the Court "has the inherent power to sanction for conduct that abuses the judicial process[, and that] power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993). Even if parties appearing before this Court have the power to contract on whether they can move for sanctions, they cannot contract around the Court's inherent authority to issue sanctions. Here, counsel was obliged to dismiss his client's claim because there was no evidence to support it. *Jolly, supra,* at 720. That obligation arose in January, and was not satisfied until March. The Court has an obligation to ensure that its limited resources are preserved for litigants with viable claims and defenses.

## CONCLUSION

For the reasons set forth in this Order, the Court **DENIES** Shaw's request for Rule 11 sanctions and **GRANTS** Shaw's request for § 1927 sanctions. [Dkt. 95.] Counsel are **ORDERED** to confer with Magistrate Judge Hussmann to try to reach an agreement regarding a reasonable amount of "excess costs, expenses, and attorney fees" that Shaw incurred after January 28, 2010 and for which Mr. Hunt should be responsible.[6] If they cannot reach an agreement, the magistrate judge may set an appropriate briefing schedule.

10/19/2010

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[6] The Court cannot determine from the record before it whether Mr. Hunt should be responsible for the fees Shaw incurred for drafting the summary judgment motion it never filed, especially given the delayed timing of Shaw's Rule 11 notice and sanctions motion.

**Distribution via ECF only:**

Robert F. Hunt
HUNT HASSLER & LORENZ LLP
hunt@huntlawfirm.net

Kristin B. Keltner
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kristin.keltner@odnss.com

Jan S. Michelsen
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
jan.michelsen@odnss.com

Steven F. Pockrass
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
steven.pockrass@ogletreedeakins.com

Candace S. Walker
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
candace.walker@odnss.com